

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LASALLE INVESTMENTS, INCORPORATED, an Illinois Corporation and ROBERT T. GERAS, <br><br>Plaintiffs, <br><br>v. <br><br>RONALD FAJERSTEIN; KYLA FAJERSTEIN; FAJERSTEIN DIAMOND IMPORTERS & CUTTERS, INC., an Illinois corporation; TAL LANDU; SUSAN PIERCE TOMCZAK; LAURY ROSE; CANDLELIGHT JEWELRY, INC., an Illinois corporation; ALEX BABITSKY; and CLUB JEWELRY MANUFACTURING, INC., an Illinois corporation, <br><br>Defendants. | No. 06 C 6193 <br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, LaSalle Investments, Inc. and Robert T. Geras (collectively, "Geras") filed a multi-count First Amended Complaint against Defendants, alleging violations under the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Counts I-III) and violations of Illinois state laws (Counts IV- XIV). Defendants, Laury Rose ("Rose") and Candlelight Jewelry, Inc. ("Candlelight"), joined by Defendants – Ronald and Kyla Fajerstein, Fajerstein Diamond Importers & Cutters, Inc. and their employee, Tal Landu (collectively, "the Fajersteins"), and Susan Pierce Tomczak ("Tomczak") – filed motions to dismiss Plaintiffs' First Amended Complaint for failure to state a cause of action under RICO and, due to the absence of the federal issues created by the RICO claims, for non-existence of pendent jurisdiction over state-law claims pursuant to 28 U.S.C. § 1367. Also, Defendants, Rose and Candlelight, argue that Plaintiffs failed to state a cause of action for Counts IV, V, VI, VII, VIII, and XII.

## BACKGROUND

A reading of the Plaintiffs' First Amended Complaint supports the following summary of the alleged operative conduct of the parties.

The Fajersteins and Tomczak specialize in the wholesale purchase and sale of diamonds. They obtain fraudulent diamond certifications from the European Gemological Laboratory ("EGL"). The certifications state that the subject diamond is of a greater color or clarity than its actual condition.

Geras joined a joint venture with the Fajersteins to purchase and sell diamonds as investments. Over the past several years, Geras advanced $388,000 to the Fajersteins for the purchase of diamonds, none of which was used for the purposes represented.

On or about March 25, 2006, the Fajersteins induced Geras to purchase a 5.51 carat diamond for $50,000 by using a fraudulent certification. Later, Geras exchanged the 5.51 carat diamond for a 9.08 carat diamond, which the Fajersteins represented was worth a wholesale price of $77,500. Subsequently, after the Fajersteins represented that they had the market knowledge to purchase and sell diamonds for profit, Geras agreed to supply the capital for the diamonds. On April 25, 2006, Geras provided the Fajersteins with $223,000, via wire transfer, in reliance on the Fajersteins' representations that they would immediately purchase, among other stones, a 15.98 carat, marquis-cut, diamond ("Brown Diamond") for $150,000. Since the Fajersteins were holding the Brown Diamond prior to the April wire transfer, they never had the intention to apply the transferred money to the joint venture but, rather, intended to use such monies for the payment of their personal and business liabilities. In addition, while the Fajersteins told Geras that the price for the Brown Diamond was almost $150,000, the Fajersteins were negotiating with the owner of the Brown Diamond to acquire it for $70,000.

After obtaining the wire transfer, the Fajersteins told Geras that the Brown Diamond was a good candidate for the high-pressure and high-temperature ("HPHT") processing to improve or change its color, thus, increasing its market value. However, they did not inform Geras of the substantial inherent risks of that process. Also, while the Fajersteins represented to Geras that the Brown Diamond was covered by insurance to protect against any loss, there was no such insurance policy. When the Brown Diamond was destroyed during the HPHT processing sometime in early July 2006, Tal Landu contacted Geras to tell them that the Fajersteins intended on informing Geras that the Brown Diamond was destroyed and that it was not purchased pursuant to the joint venture but, rather, individually by Geras.

Previously, on May 11, 2006, the Fajersteins solicited an additional $115,000 from Geras for the purchase of one large "Asscher-Cut" diamond to be sold on the open market at a significant profit. Despite Geras's prompt wire transfer of the requested funds, the Fajersteins subsequently informed Geras that the Asscher-Cut diamond was no longer available.

On July 11, 2006, Geras's personal acquaintances were interested in purchasing diamonds from the joint venture. The Fajersteins provided four diamonds (the "5 Carat Diamonds") and an additional 8.26 carat diamond (the "8 Carat Diamond") for which the Fajersteins wanted $80,000. Geras's personal acquaintances did not purchase any diamonds after seeing the stones and becoming skeptical about the stated clarity, color, and asking price of the stones.

During the July 12, 2006 and August 16, 2006 meetings between the Fajersteins and Geras, the Fajersteins denied the existence of the joint venture and stated that Geras purchased the Brown Diamond and the 5 Carat Diamonds for their own account. Geras adamantly objected to those statements, confronted the Fajersteins about the misuse of the investment money wired

3

to them and demanded the immediate return of the investment. The Fajersteins then stated that Rose and Candlelight had a buyer for the 8 Carat Diamond and that the proceeds of the sale would be guaranteed to go to Geras as partial repayment of the investment. In addition, the Fajersteins strongly urged Geras to sell two of the 5 Carat Diamonds to Babitsky and Club Jewelry for $37,500 as a partial repayment. Upon obtaining the two 5 Carat Diamonds, Babisky and Club Jewelry returned the diamonds to the Fajersteins. Geras has not received any payment for the two 5 Carat Diamonds.

Finally, on August 20, 2006, Geras delivered the 8 Carat Diamond to Rose and Candlelight, who then returned it to the Fajersteins. Geras has not received any payment for the 8 Carat Diamond from Rose or Candlelight. Geras has made demands upon Babitsky and Club Jewelry for $37,500 for the two 5 Carat Diamonds and upon Rose and Candlelight for $80,000 for the 8 Carat Diamond. Geras has also made demands, to no avail, upon the Fajersteins to return the investment. The Fajersteins instead demanded an additional payment of $400,000 with no regards to the $388,000 advanced to date by Geras, none of which was used for the purposes represented.

## ANALYSIS

In reviewing a motion to dismiss, the court considers all allegations in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). A complaint under the Federal Rules of Civil Procedure should be "short and plain," and it suffices if it notifies the defendant of the principal events. *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003) *(Hoskins)*. A plaintiff is not required to plead the fact or the elements of the claim, with the exceptions found in Federal Rule of Civil Procedure 9 (Pleading Special Matters, *i.e.*, fraud,

4

mistake, etc.). *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002) (*Swierkiewicz*); *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 713 (7th Cir. 2006) (*Kolupa*). Because RICO claims are based on fraud, Federal Rule of Civil Procedure 9(b) applies. Rule 9(b) requires that "the circumstances constituting fraud be stated with particularity" and "applies to allegations of mail and wire fraud, including where those offenses are alleged to comprise predicate acts of a RICO pattern." *Corley v. Rosewood Care Ctr., Inc.* 142 F.3d 1041, 1050 (7th Cir. 1998) *(Rosewood)*. "RICO plaintiff will sometimes be barred from suit by Rule 9(b), which provides that fraud must be pleaded with particularity." *Rotella v. Wood*, 528 U.S. 549, 560 (2000) (*Rotella*).

## *THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO") CLAIMS*

To state a cause of action under RICO, alleging a violation of 18 U.S.C. §1962(c), a plaintiff must plead (1) conduct (2) of an enterprise (3) through a pattern of racketeering activity. *Richards v. Combined Ins. Co. of America*, 55 F.3d 247, 249 (7th Cir. 1995); *R.E. Davis Chemical Corp. v. Nalco Chemical Co.*, 757 F. Supp.1499, 1516 (N.D. Ill. 1990) (*Davis*). The definition of "racketeering" provided in the statute includes a number of state and federal offenses, among which are wire and mail fraud. 18 U.S.C. § 1961(1).

Claims based on acts of mail and wire fraud "must do more than outline a scheme or make loose references to mailings and telephone calls; rather, the plaintiff must be careful to allege such particulars as who initiated the communication, when the communication took place, the contents of the communication, and how the communication furthered the scheme to defraud." *Davis*, 757 F. Supp. at 1516, *citing Landon v. GTE Comm. Serv., Inc.*, 696 F. Supp.

1213, 1218 (N.D. Ill. 1988) (*Landon*). "Without an adequate description of the predicate acts of mail and wire fraud, a complaint does not provide . . . sufficient information to determine whether or not a pattern of racketeering activity has been established." *Davis*, 757 F. Supp. at 1516.

In the present case, Defendants allege that Plaintiffs' First Amended Complaint fails to sufficiently plead the existence of an enterprise, a pattern of racketeering activity or a conspiracy to commit RICO violations. Defendants argue that Plaintiffs' First Amended Complaint outlines nothing more than a dispute between parties to a joint venture over the value of the venture's assets and capital contributed by its partners. Consequently, Defendants argue that absent the federal issues created by the RICO claims, the remaining state-law claims are no longer pendent to any federal claim and must be dismissed.

### *Sufficiently Pled "Enterprise"*

An "enterprise" is defined in Section 1961(4) of RICO as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." The enterprise must have some structure to distinguish it from a mere conspiracy, but there need not be much. *Burdett v. Miller*, 957 F.2d 1375, 1379 (7th Cir. 1992) (*Burdett*). The structure can be supplied by the continuity of the informal enterprise, such as an association-in-fact enterprise, which has been defined as "a group of persons associated together for the common purpose of engaging in a course of conduct." *U.S. v. Turkette*, 452 U.S. 576, 583 (1981). In *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990) and *Burdett*, the courts reiterated that the enterprise must have a structure and common purpose of engaging in a course of conduct.

Plaintiffs rely on *Burdett*, 957 F.2d at 1379, where the court found that there was an enterprise amongst the individuals because the structure of the enterprise was supplied by the continuity of the association-in-fact enterprise in that "it was not an *ad hoc* affair but persisted as an identifiable entity through time and by the differentiation of roles within it." Consequently, Plaintiffs argue that because their First Amended Complaint alleges that the Fajersteins operated over time as an identifiable entity (although not a legal entity) with the differentiation of roles between and amongst the Fajersteins (Ronald, Kyla, Tal Landu, Susan Tomczak, and Fajerstein Diamond Importers & Cutters, Inc.), they sufficiently plead an association-in-fact enterprise under RICO.

Defendants rely on *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1024 (7th Cir. 1992) (*Spitz*), where the court noted that RICO requires the occurrence of acts over a substantial amount of time to support the requirement of continuity necessary to establish enterprise. They argue that Plaintiffs alleged a single economic injury (the taking of Geras's investment), which constitutes a closed-ended continuity, where actions commenced with the formation of the joint venture in March 2006 and ended in August 2006 with the Fajersteins' retention of Geras's investment money, diamonds, and the denial of the existence of the joint venture. Consequently, Defendants argue that a five-month period of time (when the alleged acts took place), with no threat of future injuries, is insubstantial and will not support the requirement for continuity necessary to establish enterprise.

However, the pleadings here state a completely distinct set of facts from the type present in *Spitz*. Here, the First Amended Complaint pleads open-ended continuity (with a threat of future criminal activity), as opposed to, as in *Spitz*, closed-ended continuity, occurring over a short period of time with no threat of future activity. Because Plaintiffs plead open-ended

7

continuity and because they plead continuity of the association-in-fact enterprise, which can provide the required structure to establish "enterprise," Plaintiffs have sufficiently pled an "enterprise" under RICO.

### *Sufficiently Pled "Pattern of Racketeering Activity"*

The required "pattern" can be established by proof of at least two acts of racketeering activity within a ten-year period. 18 U.S.C. § 1961(5). However, a pattern cannot be established merely by proving two predicate acts; rather, "it must also be shown that the predicates themselves amount to, or constitute a threat of, continuing racketeering activity."
See *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240 (1989) (*Bell*).

Defendants argue that two fraudulent wire transfers by themselves do not describe the required pattern or threat of future harm sufficient to allege a violation of RICO. They cite to *Spitz* for the proposition that "acts occurring over a five-month period of time with no threat of future injuries are not sufficient" to plead a pattern of racketeering activity. Moreover, Defendants argue that the taking of Plaintiffs' funds without providing the appropriate quality diamonds may be seen as a single wrongdoing; and although several acts were needed to accomplish this goal, multiple acts in furtherance of a single episode of fraud against a single victim are not sufficient to describe a pattern. *See Sutherland v. O'Malley*, 882 F.2d 1196, 1204 (7th Cir. 1989) (plaintiff unsuccessfully invoked RICO in an effort to collect a legal referral fee, and the court rejected the effort to characterize the dispute as sufficient to establish a pattern).

However, Defendants' motion in this case is a motion to dismiss pursuant to Rule 12(b)(6) and not a motion for summary judgment pursuant to Rule 56, as was before the court in *Spitz*. Consequently, at this stage of the proceedings, the court must assume all well-

pleaded facts to be true and draw all appropriate inferences on behalf of Plaintiffs. The First Amended Complaint can be dismissed only if Plaintiffs can prove no set of facts upon which the court may grant relief. *See Conley v. Gibson*, 355 U.S. 41, 45 (1957).

Here, the First Amended Complaint alleges that the predicate acts committed by the Fajersteins are part of their regular way of conducting the business of Fajerstein Diamond and that there is a specific threat of repetition. Specifically, the First Amended Complaint alleges that "the pattern of racketeering activity by the Fajersteins . . . is a part of their regular way of conducting the business of buying and selling diamonds in interstate and foreign commerce" and that "there is a substantial likelihood that the Fajersteins . . . will continue to operate the Conspiracies, through the Associated Enterprise, or in the alternative the Fajerstein Enterprise" in violation of RICO. Therefore, Plaintiffs have sufficiently pled that the racketeering predicates are related and that they amount to, or pose a threat of, continued criminal activity. *See Bell*, 492 U.S. at 240.

Moreover, because under 18 U.S.C. § 1961(5), a "pattern" can be established by proof of at least two acts of racketeering activity within a ten-year period, here, two specifically defined fraudulent wire transfers, by themselves, can amount to a pattern under the statute. Consequently, by alleging at least two acts of racketeering activity within a ten-year period as required by the statute (two fraudulent wire transfers) and open-ended continuity (with a threat of continued criminal activity), Plaintiffs sufficiently alleged a pattern of racketeering activity to state a claim upon which relief may be granted.

## STATE-LAW CLAIMS

Pursuant to 28 U.S.C. § 1367(a), the state-law claims alleged against the Defendants fall within this Court's supplemental jurisdiction if they are "so related to [the federal] claims . . . that they form part of the same case or controversy." The "federal court's original jurisdiction over federal questions carries with it jurisdiction over state-law claims that 'derive from a common nucleus of operative fact,' such that 'the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" *Groce v. Eli Lilly & Co.*, 193 F.3d 496 (7th Cir. 1999), *quoting City of Chicago v. International College of Surgeons*, 522 U.S. 156, 164-165 (1997). The test is simply whether "a plaintiff's claims are such that he would be ordinarily expected to try them all in one judicial proceeding." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).

Because the First Amended Complaint properly pleads facts upon which relief can be granted under RICO, and because it pleads that the state-law claims are so related to the RICO claims that they form one case or controversy, this Court retains pendent jurisdiction over the state claims against Defendants.

### *Counts IV, V, VI, VII, VIII, and XII Regarding Rose and Candlelight*

Counts IV, V, VI, VII, and VIII of the First Amended Complaint all charge acts sounding in fraud against all Defendants, including Rose and Candlelight. Count XII alleges a breach of contract against Rose and Candlelight. Claims in fraud must meet the specificity requirements of Federal Rule of Civil Procedure 9(b). The Rule requires a plaintiff alleging fraud to state the identity of the person who made a misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff. *See VI Com Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 777 (7th Cir.

1994) (*VI Com*). "On a number of occasions the particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim"; however, the complaint still has to identify and detail the circumstances of the alleged fraud with sufficient particularity. *See Corley v. Rosewood Care Center, Inc. Of Peoria*, 142 F.3d 1041, 1051 (7th Cir. 1998).

Count IV alleges a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS § 505/1 *et seq.*) ("ICFA"). Claims brought under the ICFA must meet the same heightened-pleading requirements of Rule 9(b), as common-law fraud claims. *Payne v. Ken Diepholz Ford Lincoln Mercury, Inc.*, No. 02 C 1329, 2004 WL 40631 (N.D. Ill., January 5, 2004). The heightened-pleading requirement requires plaintiffs to plead the who, what, when, where, and how. *Harris v. River View Ford, Inc.*, No. 00 C 8129, 2001 WL 34671158 (N.D. Ill., December 19, 2001). In order to plead a violation of the ICFA, a plaintiff must allege: "(1) a deceptive act or practice, (2) intent on the defendants' part that plaintiff rely on the deception, and (3) the deception occurred in the course of conduct involving trade or commerce." *Chow v. Aegis Mortg. Corp.*, 286 F.Supp.2d 956, 963 (N.D. Ill. 2003).

Here, the basis for the claims against Rose and Candlelight is "on information and belief, Rose conspired with the Fajersteins to defraud Geras by obtaining the 8 Carat Diamond and returning the same to the Fajersteins." None of the allegations in the First Amended Complaint regarding Rose and Candlelight are based on any statements made by Rose or Candlelight themselves. Because the First Amended Complaint fails to allege that Rose or Candlelight made any misrepresentations to the Plaintiffs, the time, place, and the method the misrepresentations were communicated, the First Amended Complaint fails to comply with the specificity

requirements of Rule 9(b). *See VI Com,* 20 F.3d at 777. Thus, Count IV of the First Amended Complaint is dismissed as to Rose and Candlelight.

Count V alleges civil conspiracy to violate the ICFA. Because Plaintiffs have failed to plead a substantive violation of the ICFA, the conspiracy claim against Rose and Candlelight rests entirely on paragraph 70 of the First Amended Complaint, which states that Rose and Candlelight conspired, based on "information and belief." Count V is based on fraud; thus, it must comply with Rule 9(b). Here, the only allegation in the First Amended Complaint is that a conspiracy occurred; and, without more, it is insufficient to plead such a claim under Rule 9(b). Thus, Count V of the First Amended Complaint is dismissed as to Rose and Candlelight.

Count VI alleges violation of the Uniform Deceptive Trade Practices Act (815 ILCS § 510/1, *et. seq.)* ("UDTPA"). The UDTPA is intended to address "conduct involving either misleading trade identification or false or deceptive advertising." 815 ILCS § 510 (prefatory note). In other words, the Act is directed towards unfair competition and "acts which unreasonably interfere with another's conduct of his business." *Industrial Specialty Chemicals v. Cummings Engine Co.*, 902 F. Supp. 805, 812 (N.D. Ill. 1995) (*Chemicals*).

The First Amended Complaint fails to allege that Rose or Candlelight made any misrepresentations as to ownership of the 8 Carat Diamond; thus, it fails to allege a violation of the UDTPA. *See Chemicals*, 902 F. Supp. at 813. Count VI is dismissed as to Rose and Candlelight.

Count VII alleges civil conspiracy to violate the UDTPA. The First Amended Complaint fails to allege any facts regarding Rose's and Candlelight's conspiring to violate the UDTPA. Thus, Count VII is dismissed as to Rose and Candlelight.

Count VIII alleges fraud. "The requisite elements of a common-law fraud cause of action are: (1) a false statement of material fact, intentionally made; (2) the party to whom the statement was made had the right to rely on it; (3) the statement was made for the purpose of inducing reliance thereon; and (4) the reliance by the person to whom the statement was made led to his injury." *Chemicals*, 902 F. Supp. at 813.

The First Amended Complaint fails to allege any statements, let alone any false statements of material fact, by Rose or Candlelight. Count VIII does not state an action for fraud against Rose and Candlelight; thus, it is dismissed as to Rose and Candlelight.

Because, in the present case, the First Amended Complaint contains no facts (no statements attributed to Rose or Candlelight at all) to define and identify the elements of statutory and common-law fraud with sufficient particularity, Rule 9(b) should not be relaxed.

Count XII alleges a breach of contract by Rose and Candlelight. Because a breach-of-contract claim does not fall within the exceptions found in Federal Rule of Civil Procedure 9 (such as pleading fraud, mistake, etc.), a plaintiff is not required to plead the facts or the elements of the claim. *See Swierkiewicz*, 534 U.S. at 511; *Kolupa*, 438 F.3d at 713. It suffices if the pleading notifies the defendant of the principal events. *See Hoskins*, 320 F.3d at 764.

In the present case, the First Amended Complaint sufficiently alleges the terms of a contract and its breach by the Defendants. It notifies Rose and Candlelight of the principal events and provides sufficient facts for the Court to take as true and determine that a breach of contract has occurred. Specifically, the First Amended Complaint alleges that on or about August 20, 2006, Tal Landu (the Fajersteins' employee) contacted Geras and indicated that Rose and Candlelight had a client who would purchase the 8 Carat Diamond. Further, that on August 21, 2006, Geras delivered the 8 Carat Diamond to Rose and Candlelight and presented them with

13

a "Candlelight Jewelry Memorandum." Pursuant to the Candlelight Jewelry Memorandum, Rose and Candlelight agreed to pay Geras $80,000 in the event of sale or loss of the 8 Carat Diamond. Also, Rose and Candlelight agreed to "pay all of [Geras's] costs, including court costs, interest (18% per annum to begin accruing after 30 days), reasonable attorney's fees and all ancillary expenses, in the event it is necessary for [Geras] to enforce its rights" under the Candlelight Jewelry Memorandum. Moreover, the Candlelight Jewelry Memorandum indicates that: (a) the 8 Carat Diamond "shall remain the property of [Geras]," (b) "it shall be immediately returned on demand, in full in its original form," (c) that Candlelight and Rose "acquire no right or authority to sell, pledge, hypothecate, or otherwise dispose of the" 8 Carat Diamond. Rose signed the Candlelight Jewelry Memorandum, acknowledging its terms.

Consequently, the First Amended Complaint properly states a cause of action for breach of contract against Rose and Candlelight. As a result, the motion to dismiss Count XII is denied.

### *THE FAJERSTEINS' AND TOMCZAK'S MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT*

The Fajersteins' and Tomczak's motions to dismiss Plaintiffs' First Amended Complaint incorporate by reference Rose's and Candlelight's memorandum of law with respect to Counts I-III (RICO claims). Because Rose's and Candlelight's Motion to Dismiss Counts I-III is denied (Plaintiffs have sufficiently pled a cause of action under RICO), so it is denied with respect to the Fajersteins and Tomczak.

## CONCLUSION

For the foregoing reasons, Rose's and Candlelight's Motion to Dismiss Plaintiffs' First Amended Complaint is granted in part and denied in part. Counts IV, V, VI, VII, VIII are dismissed as to Rose and Candlelight.

Fajersteins' and Tomczak's motions to dismiss Plaintiffs' First Amended Complaint as to Counts I-III (RICO claims) are denied.

Dated: June 27, 2007

6-27-07

JOHN W. DARRAH
United States District Court Judge

15